IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

Dianne C. Wormuth                                    *
250 Bradon Way
Edgewater MD 21037                                   *

    Plaintiff                                    *

v.                                                   *      Case No.: 02-C-14-191115

Bank of America NA                                   *
Serve: Resident Agent
THE CORPORATION TRUST INCORPORATED *
351 WEST CAMDEN STREET
BALTIMORE, MD 21201                                  *

Ocwen Loan Servicing LLC.                            *
Serve Resident Agent
CSC-LAWYERS INCORPORATING                            *
SERVICE COMPANY
7 ST. PAUL STREET, SUITE 1660                        *
BALTIMORE, MD 21202

    Defendants                                   °

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Dianne C. Wormuth (Mrs. Wormuth or Plaintiff) files this action against the

Defendant Bank of America, NA (BOA) and Ocwen Loan Servicing LLC (Ocwen)

because BOA and Ocwen have harassed and dogged her to pay a debt that BOA and

Ocwen know has been discharged. Despite their knowledge that they have no right to

claim any amount due from the Mrs. Wormuth, BOA and Ocwen have claimed,

attempted and threatened to enforce rights with knowledge the rights do not exist.

Further, through a concerted campaign of robo-calling her at her place of employment,

the Defendants have communicated with Mrs. Wormuth with such frequency, and at

1

such unusual hours, and in a manner such that it reasonably can be expected to abuse or harass her.

## I.  BACKGROUND

1.  The plaintiff, Mrs. Wormuth is a citizen and resident of Maryland and is a consumer.

2.  Defendant, Bank of America NA (BOA) is a National Bank engaged in the business of servicing and holding mortgage loans in the State of Maryland and nationwide. Defendant, Ocwen Loan Servicing, LLC is a entity that engages in various aspects for the mortgage industry including servicing loan in the State of Maryland and nationwide.

## II.  FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' IMPROPER AND UNLAWFUL ACTS

3.  On December 10, 2007, Mrs. Wormuth's life changed dramatically. Her husband of more than 40 years passed away.

4.  Without his income, there was no way for her to keep the home where they had lived together since 2002. She attempted to sell the house or do a short sale with BOA, but BOA would not cooperate.

5.  As a result, she was forced to file bankruptcy to deal with her debts that were no longer affordable.

6.  This included two loans on the home owed to the Defendant.

7.  On August 19, 2008, Mrs. Wormuth filed her bankruptcy proceeding. She included the Defendant, BOA, as a creditor.

8.  BOA sent Mrs. Wormuth a letter dated August 22, 2008 acknowledging it knew about her bankruptcy.

2

9.  BOA later filed a motion in her bankruptcy proceeding relating to her loans.

10. On January 26, 2009, Mrs. Wormuth was granted a discharge of her personal liability on her obligations, including any amounts owed to BOA.

11. Despite the discharge order, on February 19, 2009, BOA sent Mrs. Wormuth a letter stating that she was behind on her payments.

12. On October 6, 2010 BOA sent her a request for insurance information relating to the home.

13. In response, Mrs. Wormuth called BOA on November 5, 2010 advising it about the bankruptcy and provided her case number. BOA's representative advised her to ignore the request for insurance information.

14. In the months of August, 2011 through April, 2012, Mrs. Wormuth received numerous harassing calls from BOA relating to the discharged loans. There were literally hundreds of calls.

15. On September 28, 2011 she again called BOA and provided her bankruptcy case information. The calls did not stop.

16. On October 5, 2011 she faxed a copy of her discharge to BOA. The calls did not stop.

17. On October 13, 2011, she again called BOA and provided her bankruptcy case information. The calls did not stop.

18. On December 15, 2011, she filed a complaint with the Office of the Comptroller of Currency (OCC) in an effort to stop the harassing calls

19. On April 9, 2012, BOA responded to the OCC complaint by acknowledging receipt of the papers relating to Plaintiff's bankruptcy but, it asserted:

> It is important for you to understand that Bank Of America will stop collection calls but will not stop sending you monthly statements, correspondence or notices related to collection or foreclosure activity, until such time as the delinquency is resolved or your account is brought current.

20.    As noted above, BOA was included as creditor, filed a motion in the bankruptcy case and was provided the discharge order by both the bankruptcy court and Mrs. Wormuth. Despite this, BOA also stated in that letter:

> While we are in receipt of a Discharge of Debtor document for Chapter 7 bankruptcy dated January 26, 2009, our records do not indicate that we were notified of a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court.

21.    On April 27, 2012 BOA sent another demand for payment despite acknowledging the bankruptcy in the same statement.

22.    On October 5, 2012, BOA transferred the loan and or servicing to Ocwen Loan Servicing, LLC.

23.    On October 10, 2012, in response to BOA's request, Mrs. Wormuth faxed another copy of the discharge order.

24.    On October 24, 2012, Mrs. Wormuth sent a letter to Ocwen and included a copy of the discharge and a request that they stop sending bills and other correspondence.

25.    On November 12, 2012, Ocwen acknowledged receipt of Mrs. Wormuth's letter.

26.    Despite this, Ocwen sent bills for insurance that it claimed to have obtained in connection with her discharged loans.

27.    In January, 2014, Ocwen began calling Mrs. Wormuth at her place of employment.

28.   Between January, 2014 through September 15, 2014, Ocwen called her workplace at least 30 times.

29.   The Plaintiff has suffered emotional distress by the Defendant's wrongful actions. As a proximate result of their illegal actions, Mrs. Wormuth has suffered both economic and noneconomic damages, injury or loss.   The Plaintiff has suffered physical manifestations resulting from the distress inflicted by BOA and Ocwen. These include sleeplessness, nausea, loss of appetite, crying, loss of sleep, insomnia, irritability, social withdrawal, headaches, loss of concentration and an inability to enjoy her family and home in peace and solitude.

30.   BOA and Ocwen acted with knowledge of the Bankruptcy.

31.   BOA and Ocwen knew that the Plaintiff was granted a discharge by the bankruptcy court.

32.   BOA and Ocwen claimed, attempted or threatened to enforce rights, which they knew did not exist. Further, BOA and Ocwen did not have any business purpose in asserting rights that it knew did not exist.

33.   BOA and Ocwen communicated with Mrs. Wormuth with frequency, at unusual hours, and in a manner that reasonably could be expected to abuse or harass her.

III.   **LEGAL CLAIMS**

### COUNT I
*Violation of the Maryland Consumer Debt Collection Act ("MCDCA")*

34.   Plaintiff incorporates the allegations in the foregoing paragraphs.

35.   The Defendants' actions described herein violate the Maryland Debt Collection Practices Act, § 14-201 et seq. of the Maryland Commercial Law Article.

36. In violation of § 14-202(8), the Defendants have claimed, attempted or threatened to enforce a right with knowledge that the right does not exist.

37. In violation of § 14-202(6), the Defendants communicated with such frequency, during such unusual hours and in such a manner as was reasonably be expected to abuse or harass the Plaintiff.

38. The Defendants' actions have caused the Plaintiff emotional distress and mental anguish, and have otherwise both economic and noneconomic damages to the Plaintiff.

**COUNT II**
*Violation of the Maryland Consumer Protection Act ("MCPA")*

39. The Plaintiff incorporates the allegations in the foregoing paragraphs.

40. The Defendants' acts constitute an unfair or deceptive trade practice under Maryland law, including violations of several provisions of the Maryland Consumer Protection Act, including:

   A. § 13-301(1): Making false or misleading oral and written statements which have the tendency or effect of deceiving or misleading consumers;

   B. § 13-301(3): Failure to state a material fact which deceives or tends to deceive;

   C. § 13-301(14)(iii): Violation of the Maryland Consumer Debt Collection Act.

41. The Plaintiff has sustained actual injury or loss as a result of the Defendants' practices which are prohibited by the Maryland Consumer Protection Act, and has otherwise suffered actual damages caused by the Defendants' actions.

42. The Plaintiff is entitled to relief under the Maryland Consumer Protection Act.

WHEREFORE, the Plaintiff prays for judgment in her favor for the following relief:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

b. An award of attorney's fees and costs; and

c. Such and other further relief the nature of the Plaintiff's cause may require.

Respectfully Submitted,

PETER A. HOLLAND
The Holland Law Firm, P.C.
1910 Towne Centre Blvd., Ste. 250
P.O. Box 6268
Annapolis, MD 21401
410 280 6133
410-280-8650 (fax)
peter@hollandlawfirm.com

and

Scott C. Borison
Borison@legglaw.com
Legg Law Firm, LLC
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com

MD Office:
5235 Westview Dr. Suite 100
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

*Attorneys for Plaintiffs*

### REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury of any claims that may be determined by a jury.

PETER A. HOLLAND