### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Dianne C. Wormuth | * | |
| Plaintiff, | * | |
| v. | * | Case No.:1:14-cv-03709-GLR |
| Bank of America NA | * | |
| And | * | JURY TRIAL DEMANDED |
| Ocwen Loan Servicing LLC. | * | |
| Defendants. | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

### FIRST AMENDED COMPLAINT [1]

Dianne C. Wormuth (Mrs. Wormuth or Plaintiff) files this action against the Defendant Bank of America, NA (BOA) and Ocwen Loan Servicing LLC (Ocwen) because BOA and Ocwen have harassed and dogged her to pay a debt that BOA and Ocwen know has been discharged in a Chapter 7 Bankruptcy. Despite their knowledge that they have no right to claim any amount due from the Mrs. Wormuth, BOA and Ocwen have claimed, attempted and threatened to enforce rights with knowledge the rights do not exist.  Further, through a concerted campaign of robo-calling her at her place of employment, the Defendants have communicated with Mrs. Wormuth with such frequency, and at such unusual hour in a manner that reasonably can be expected to abuse or harass her.  In addition, Ocwen wrongfully and illegally accessed her credit report.  As a direct and proximate result of the wrongful and illegal acts of both BOA and

---

[1] A comparison between the Initial complaint and this Amended Complaint is being filed contemporaneously.

Ocwen, the Plaintiff has suffered legally cognizable statutory, economic and non-economic damages, injury or loss for which she seeks compensation in excess of $75,000.00 in an amount to be determined by a jury, plus reasonable costs and attorneys' fees.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the claims asserted herein under 15 U.S.C.A. § 1681p and 28 U.S.C.A. § 1331 for the federal claim, 15 U.S.C.A § 1332 for all claims since the parties have diverse citizenship and the amount in controversy is more than $75,000 and supplemental jurisdiction over the state law claims under 28 U.S.C.A. § 1367.

2.      Venue is proper in this Court under 28 U.S.C.A. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District.

## PARTIES

3.      The plaintiff, Mrs. Wormuth is a citizen and resident of Maryland and is a consumer.

4.      Defendant, Bank of America NA (BOA) is a National Bank engaged in the business of servicing and holding mortgage loans in the State of Maryland and nationwide. Defendant, Ocwen Loan Servicing, LLC is an entity that engages in various aspects for the mortgage industry including servicing loan in the State of Maryland and nationwide.

## FACTUAL ALLEGATIONS RELATING TO
## DEFENDANTS' IMPROPER AND UNLAWFUL ACTS

5.      On December 10, 2007, Mrs. Wormuth's life changed dramatically. Her husband of more than 40 years passed away.

6.      Without his income, there was no way for her to keep the home where they had lived together since 2002. She attempted to sell the house or do a short sale with BOA, but BOA would not cooperate.

7.      As a result, she was forced to file a Chapter 7 bankruptcy to deal with her debts that were no longer affordable.

8.      This included two consumer loans on the home owed to the Defendant.

9.      On August 19, 2008, Mrs. Wormuth filed her Chapter 7 bankruptcy proceeding. She included the Defendant, BOA, as a creditor.

10.     BOA sent Mrs. Wormuth a letter dated August 22, 2008 acknowledging it knew about her bankruptcy.

11.     BOA later filed a motion in her bankruptcy proceeding relating to her loans.

12.     On January 26, 2009, Mrs. Wormuth was granted a Chapter 7 discharge of her personal liability on her obligations, including any amounts owed to BOA.

13.     Despite the discharge order, on February 19, 2009, BOA sent Mrs. Wormuth a letter stating that she was behind on her payments.

14.     On October 6, 2010 BOA sent her a request for insurance information relating to the home.

15.     In response, Mrs. Wormuth called BOA on November 5, 2010 advising it about the bankruptcy and provided her case number. BOA's representative advised her to ignore the request for insurance information.

16.     In the months of August, 2011 through April, 2012, Mrs. Wormuth

3

received numerous harassing calls from BOA relating to the discharged loans. There were literally hundreds of calls.

17.     On September 28, 2011 she again called BOA and provided her bankruptcy case information. The calls did not stop.

18.     On October 5, 2011 she faxed a copy of her discharge to BOA.  The calls did not stop.

19.     On October 13, 2011, she again called BOA and provided her bankruptcy case information. The calls did not stop.

20.     On December 15, 2011, she filed a complaint with the Office of the Comptroller of Currency (OCC) in an effort to stop the harassing calls.

21.     On April 9, 2012, BOA responded to the OCC complaint by acknowledging receipt of the papers relating to Plaintiff's bankruptcy but, it asserted:

> It is important for you to understand that Bank Of America will stop collection calls but will not stop sending you monthly statements, correspondence or notices related to collection or foreclosure activity, until such time as the delinquency is resolved or your account is brought current.

22.     As noted above, BOA was included as creditor, filed a motion in the bankruptcy case and was provided the discharge order by both the bankruptcy court and Mrs. Wormuth. Despite this, BOA also stated in the April 9, 2012 letter:

> While we are in receipt of a Discharge of Debtor document for Chapter 7 bankruptcy dated January 26, 2009, our records do not indicate that we were notified of a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court.

23.     On April 27, 2012 BOA sent another demand for payment despite acknowledging the bankruptcy in the same statement, and in a letter dated July 14, 2012, the BOA "Home Loan Team" invited the Plaintiff to apply for a loan modification

4

based on an "unpaid principal balance before modification" of $504,000.00 plus a "past due interest and advances" of $64,000.00. Two days later on July 16, 2012, the Plaintiff again sent a letter to BOA advising them of the bankruptcy and demanding that BOA stop contacting her, and advising that BOA was ignoring a court order of bankruptcy discharge.

Finally, in a letter "For Information Purposes" dated September 27, 2012, BOA acknowledged the bankruptcy discharge, and advised that "...you have no personal obligation to repay [this debt]. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor."

24.    According to a letter titled "Notice of Assignment, Sale or Transfer of Servicing Rights" from Ocwen dated October 5, 2012, BOA transferred the loan and or servicing to Ocwen effective on October 1, 2012. The October 5, 2012 letter from Ocwen stated: "As of the date of transfer, your principal balance was $376,000.00 and your escrow balance was $-21,835.92." and included a demand for payment which stated "Please detach below and include with your monthly payment." In this same letter Ocwen also acknowledged that it is a debt collector.

25.    On the same date (October 5, 2012), Ocwen sent a second letter stating that "Total Due" from Ms. Wormuth was $507,891.25 which included $109,353.33 for interest and $21,835.92 for escrow advances. The large interest and escrow amounts were because the loan had not been paid and was in default when Ocwen became the servicer. The letter also contained in small print at the bottom of the letter the statement

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in an active bankruptcy or has been discharged through bankruptcy, this

communication is not intended as and does not constitute an
attempt to collect a debt.

26.     Upon information and belief, BOA provided Ocwen information relating to

Mrs. Wormuth's loan including that there had been a prior bankruptcy proceeding. The

same information is readily available to Ocwen through the Pacer system.

27.     On October 9, 2012, Ocwen sent Mrs. Wormuth a "Relationship Manager

Notice" with the notation "This communication is from a debt collector attempting to

collect a debt…."

28.     On October 10, 2012, in response to BOA's request, Mrs. Wormuth faxed

another copy of the bankruptcy discharge order.

29.     On October 11, 2012 Ocwen sent a statement to Mrs. Wormuth that stated

the "Past Due Amounts DUE IMMEDIATELY" was $120,693.59. Under important

messages, she was advised that "we may report information about your account to credit

bureaus. There was also a notation:

> If you are currently in bankruptcy or if you have filed for
> bankruptcy since obtaining this loan, please read the
> bankruptcy information provided on the back of this
> statement.

30.     The notation on the back of the statement stated:

> If you or your account are subject to pending bankruptcy or
> the obligation referenced in this statement has been
> discharged in bankruptcy, this statement is for informational
> purposes only and is not an attempt to collect a debt. If you
> have any questions regarding this statement, or do not want
> Ocwen to send you monthly statements in the future, please
> contact us at 1-888-554-6599.

31.     On October 24, 2012, Mrs. Wormuth sent a letter to Ocwen and included a

copy of her Chapter 7 bankruptcy discharge and a request that they stop sending bills

and other correspondence.

32.     On November 12, 2012, Ocwen acknowledged receipt of Mrs. Wormuth's letter. In that letter, Ocwen represented to Mrs. Wormuth:

> Pursuant to the receipt of your correspondence, we have updated our records to ensure that no telephone calls are made to your attention, with regard to the above loan. Further, we have notated our records to ensure that no account statements or correspondences are sent to your attention pertaining to the loan.

33.     Despite Ocwen's written representation on November 12, 2012, Ocwen continued to send Mrs. Wormuth demands for payment and to call her on numerous occasions.

34.     In January, 2014, Ocwen began calling Mrs. Wormuth at her place of employment.

35.     Between January, 2014 and September 15, 2014, Ocwen called her workplace at least 30 times.

36.     Ocwen sent Mrs. Wormuth a statement on February 7, 2013 that stated "Past Due Amounts DUE IMMEDIATELY" was $128,704.43 with an "Important Message" that "Due to the status of your loan, fee(s) or charge(s) have recently been added."

37.     On July 11, 2013, Ocwen sent her a letter entitled "Mortgage Assistance Resources."  The letter advised her to contact her relationship manager, Eulisa Miranda, and provide loss mitigation materials.

38.     On July 15, 2013 Ocwen sent her another letter entitled "Mortgage Assistance Resources".  The letter again advised her to contact her relationship manager, who was changed to Patricia Medina, and to provide loss mitigation materials.

7

39.    On November 7, 2013, Ocwen sent her another letter entitled "Mortgage Assistance Resources".   The letter again advised her to contact her relationship manager, who was changed to Stephen Lewis, and to provide loss mitigation materials.

40.    On November 16, 2013 Ocwen sent her another letter stating "[w]e understand that you may have had an unexpected expense, loss of income, or another circumstance that has prevent you from making your mortgage payments. We recently sent you a letter outlining some of the options that may be available to you."

41.    On January 28, 2014 Ocwen obtained a copy of Mrs. Wormuth's credit information from Experian.

42.    On February 4, 2014, Ocwen Mrs. Wormuth another letter entitled "Mortgage Assistance Resources".   The letter again advised her to contact her relationship manager, who was changed to Darayas n Magras [sic], and to provide loss mitigation materials.

43.    On October 8, 2014 Ocwen sent her another letter with the subject "**Please provide insurance information for**…). At the bottom of the third page of the letter, Ocwen stated the following:

> If you have filed a bankruptcy case with respect to your obligation to Ocwen Loan Servicing LLC, you should discuss this notice with your bankruptcy attorney. Whether or not you are liable for any sums advanced, will depend upon the type of bankruptcy which you have filed and whether you have reaffirmed your debt with Ocwen Loan Servicing, LLC.

44.    As a direct and proximate result of the wrongful and illegal conduct of BOA and Ocwen, the Plaintiff has suffered out of pocket financial damages, emotional distress, and economic and non-economic damages, injury or loss, all of which were proximately caused by the Defendants' wrongful actions to collect on a discharged debt.

As a proximate result of the Defendants' illegal actions, Mrs. Wormuth has suffered both economic and noneconomic damages, injury or loss. Damages include but are not limited to:

a.     The Plaintiff has suffered physical manifestations of emotional distress inflicted by BOA and Ocwen. These include sleeplessness, nausea, loss of appetite, crying, loss of sleep, insomnia, irritability, social withdrawal, headaches, loss of concentration and an inability to enjoy her family and home in peace and solitude.

b.     The Plaintiff has incurred out of pocket expenses to send letters to BOA and Ocwen.

c.     The Plaintiff has incurred attorneys' fees to investigate and advise her of her rights.

d.     The Plaintiff has had her privacy invaded by BOA and Ocwen's illegal intrusion upon her seclusion, by sending her letter after letter and making phone call after phone call seeking to collect on a non-existent debt.

e.     The Plaintiff's rights were violated when Ocwen obtained her credit report without any permissible purpose, which entitles her to statutory, actual and punitive damages.

45.     In reliance on the repeated letters and phone calls from both BOA and Ocwen, the Plaintiff contacted both BOA and Ocwen on numerous occasions to advise that her personal obligation on the loan had been discharged.  Each time she sent a letter, she was acting in reliance on the representations of each Defendant that they had customer service or "relationship managers" or competent people and software in their

capacity as servicers who could answer inquiries and process the information she provided them repeatedly.  Her reliance on the representations of BOA and Ocwen which caused her to write repeated letters was also based on the reasonable and justified expectation that BOA and Ocwen would comply with their duties to correct their knowing errors and act lawfully.

46.     BOA and Ocwen knew that the Plaintiff was granted a discharge by the bankruptcy court.

47.     BOA and Ocwen claimed, attempted or threatened to enforce rights, which they knew did not exist. Further, BOA and Ocwen did not have any business purpose in asserting rights that they knew did not exist.

48.     BOA and Ocwen communicated with Mrs. Wormuth with such frequency, at unusual hours, and in a manner that reasonably could be expected to abuse or harass her.

49.     Ocwen obtained Mrs. Wormuth's credit information from Experian without a permissible purpose. Ocwen obtained this information well after it had knowledge of Mrs. Wormuth's bankruptcy and the discharge of any debt owed to BOA or Ocwen.

## COUNT I
### *Violation of the Maryland Consumer Debt Collection Act ("MCDCA")*

50.     Plaintiff incorporates the allegations in the foregoing paragraphs.

51.     The Defendants' actions described herein violate the Maryland Debt Collection Practices Act, § 14-201 et seq. of the Maryland Commercial Law Article.

52.     In violation of § 14-202(8), the Defendants have claimed, attempted or

threatened to enforce a right with knowledge that the right does not exist.

53.    In violation of § 14-202(6), the Defendants communicated with such frequency, during such unusual hours and in such a manner as was reasonably be expected to abuse or harass the Plaintiff.

54.    The Defendants' actions have caused the Plaintiff emotional distress and mental anguish, and have otherwise both economic and noneconomic damages to the Plaintiff.

WHEREFORE, the Plaintiff prays for judgment in her favor for the following relief against the Defendants, jointly and severally:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

b. An award of costs, including reasonable attorney's fees.

c. Such and other further relief the nature of the Plaintiff's cause may require.

## COUNT II
### *Violation of the Maryland Consumer Protection Act ("MCPA")*

55.    The Plaintiff incorporates the allegations in the foregoing paragraphs.

56.    The Defendants' acts constitute an unfair or deceptive trade practice under Maryland law, including violations of several provisions of the Maryland Consumer Protection Act, including:

A. § 13-301(1): Making false or misleading oral and written statements which have the tendency or effect of deceiving or misleading consumers;

B.  § 13-301(3): Failure to state a material fact which deceives or tends to deceive;

C.  § 13-301(14)(iii): Violation of the Maryland Consumer Debt Collection Act.

57.    The Plaintiff has sustained actual injury or loss as a result of the Defendants' practices which are prohibited by the Maryland Consumer Protection Act, and has otherwise suffered actual damages caused by the Defendants' actions.

58.    The Plaintiff is entitled to relief under the Maryland Consumer Protection Act.

WHEREFORE, the Plaintiff prays for judgment in her favor for the following relief against the Defendants, jointly and severally:    a.  An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

b.  An award of costs, including reasonable attorney's fees.

c.  Such and other further relief the nature of the Plaintiff's cause may require.

### COUNT III
### *Violation of the Fair Credit Reporting Act  ("FCRA")*
### *(Against Ocwen Only)*

59.    The Plaintiff incorporates the allegations in the foregoing paragraphs.

60.    Ocwen obtained credit information concerning Mrs. Wormuth from a consumer reporting agency. Ocwen was a user of information obtained from a consumer reporting agency, Experian Information Systems.

61.    Ocwen did not have a permissible purpose in obtaining the credit information concerning Mrs. Wormuth from any consumer reporting agency.

62.     Ocwen knew that it did not have any permissible purpose to obtain Mrs. Wormuth's credit information from a consumer reporting agency.

63.     Ocwen provided false information to obtain information concerning Mrs. Wormuth from a consumer reporting agency since it did not have any permissible purpose. Ocwen did not disclose its impermissible purpose in obtaining the report form the consumer reporting agency.

64.     Ocwen acted willfully when it obtained credit information concerning Mrs. Wormuth from a consumer reporting agency.

65.     Ocwen violated the provisions of 15 U.S.C.A. § 1681b and 1691q of the FCRA.

66.     Mrs. Wormuth has suffered actual damages arising from Ocwen's invasion of her privacy.

67.     Ocwen is liable for actual, statutory and punitive damages for its willful violation of the FCRA pursuant to 15 U.S.C.A. 1681n.

WHEREFORE, the Plaintiff prays for judgment in her favor for the following relief against Ocwen on this Count:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000 as well as statutory damages up to $1,000;

b. An award of punitive damages against Ocwen in an amount to be determined at trial;

c. An award of costs, including reasonable attorney's fees.

d. Such and other further relief the nature of the Plaintiff's cause may require.

//

//

//

Respectfully Submitted,

___/s/_____
PETER A. HOLLAND
The Holland Law Firm, P.C.
P.O. Box 6268
Annapolis, MD 21401
410 280 6133
410-280-8650 (fax)
peter@hollandlawfirm.com

and

Scott C. Borison
Legg Law Firm, LLC
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com
MD Office:
5235 Westview Dr. Suite 100
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

*Attorneys for Plaintiff*

### REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury of any claims that may be determined by a jury.

____/s/_____
PETER A. HOLLAND